Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7323 | **DATE** | 08/13/2001 |
| **CASE TITLE** | Michael v. SMG, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's motion for summary judgment (6-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the attached reasons, Defendant's motion for summary judgment is GRANTED. All pending dates and motions are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | AUG 21 2001 date docketed | |
| ✓ | Docketing to mail notices. | | 10 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | FILED FOR DOCKETING 01 AUG 15 PM 6:34 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FATHY MICHAEL<br>    Plaintiff,<br><br>v.<br><br>SMG, Inc. and<br> SPECIAL MEAT GROUP, Inc.<br>    Defendants. | CASE NO. 99 C 7323<br><br>JUDGE WILLIAM J. HIBBLER |

**MEMORANDUM AND ORDER**

Mr. Fathy Michael ("Plaintiff") filed a two-count complaint against SMG, Inc. and Specialty Meat Group, Inc. ("Defendant") alleging, first, employment discrimination based on national origin and religion under 42 U.S.C § 1981 and Title VII of the 1964 Civil Rights Act (as amended 42 U.S.C § 2000e, et seq.), and, second, age discrimination in violation of the Age Discrimination in Employment Act ("ADEA")(as amended, 29 U.S.C § 621, et seq.). Defendant has moved for summary judgment. For the below reasons, Defendant's motion for summary judgment is GRANTED.

**STATEMENT OF THE FACTS**

Defendant produces and markets processed meat products to a number of national and regional retailers, restaurants, and distributors. Plaintiff is a male resident of Illinois and a naturalized United States citizen; his national origin is Egypt and his religion is Christian Coptic-Orthodox. Plaintiff was fifty-one years old when he was initially hired as an "at will" employee. He was employed by Defendant at its Chicago plant from February 22, 1995 until October 29, 1998, when he was terminated as a result of alleged misconduct.

Early in his employment, Plaintiff requested that he not have to

work on Sundays. This request was granted; during his employment with Defendant, Plaintiff never worked on Sundays. Plaintiff was employed as a Quality Control Technician; his duties consisted of verifying the production workers were doing their jobs properly and guaranteeing the final product met the appropriate standards. Specifically, every product needed to be checked for temperature, code date, weight, wholesomeness, appearance, and compliance with governmental regulations. Plaintiff did not have the authority to approve a product that was visibly deficient. Rather, Defendant's policy mandated if a Quality Control Technician observed anything wrong with the finished product, then the Quality Control Technician should tag the product to ensure it did not leave the plant. After a product was tagged, Ken Schissler, the general manager of the facility, or another supervisor would examine the product and determine whether the product met the companies standards for a finished product.

Barry Jones, who was sixty-six years old when Plaintiff was terminated, was Plaintiff's supervisor, before being replaced by Jeffery Trimble, who was in his mid-twenties, as Assistant Quality Control Supervisor. Plaintiff has alleged Barry Jones told him he was "getting old and forgetful" on multiple occasions. (Def.'s SMF at ¶15.) Also, Plaintiff has claimed Jones called Plaintiff a "fundamentalist" in front of Schissler and a federal inspector, although Plaintiff admitted he did not know whether Jones was referring to his religion or to something else in a non-religious context. (*Id.* at ¶16.)

Defendant maintains Plaintiff had difficulty understanding how to perform his job. Plaintiff received numerous warnings for a number of

2

different violations. For example, Plaintiff received two written warnings for deficient inspection procedures; an oral and a written warning for incorrect code dates; four warnings for careless workmanship (i.e. a written memo, a three-day suspension, a final warning, and finally termination); two written warnings for failure to record net weights; one written warning for failure to ensure completion of paperwork; one written warning for failure to take corrective action on a critical control point; one written warning for failure to inventory and stock QC cabinets; and one written warning for falsification of documents. Defendant asserts the warnings were an attempt to provide instruction in accordance with its progressive discipline policy. However, if several instructions were given for the same matter, then the policy permitted disciplinary action.

Plaintiff admits he made some mistakes, but he argues Trimble treated him differently because he requested not to work on Sundays. For example, Plaintiff claims he received more severe discipline than another employee; however, Plaintiff admits he does not know whether she had ever made mistakes similar to his own. Also, Plaintiff claims another employee received more lenient discipline for a code date violation; again, however, Plaintiff admits he does not know if she had ever made a mistake similar to his mistake. Trimble stated other employees had similar write-ups, but Plaintiff had the largest number of warnings.

In the weeks preceding October 26, 1998, Defendant had briefed all its inspectors as to how they should handle a finished product that had

visible fat.[1]   Plaintiff was reminded about the companies policy on visible fat ten days prior to the final incident which led to his termination. Moreover, Michael had followed the procedure in the past, referring "fatting out" questions to management.

Despite Plaintiff's knowledge of the "zero tolerance", training on the proper procedures, as well as his lack of authority to approve a final product, Plaintiff inspected a product on October 26, 1998 and noted on the inspection form that the product had some fat out within acceptable limits. Plaintiff did not notify anyone in management about the product or inquire as to the acceptable standards for "fat out."

On October 26, 1998, Schissler terminated Plaintiff. Trimble did not have the authority to fire Plaintiff, but he did discuss the situation with Schissler. Jones did not discuss the firing with Schissler or discuss Plaintiff's past work with Schissler prior to the firing. The decision to fire Plaintiff was initiated and made solely by Schissler, and according to Defendant, was a direct result of Plaintiff's most recent error with the fatting-out standard and his chronic unacceptable job performance.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[1] Visible fat was referred to as "fat out" and occurred during the cooking process when the finished meat product was stuffed into the cellulose casing. If the casing was not tight against the product, fat accumulated from the product in between the product and the casing and could be seen in the package. The visible fat gave the product a poor and unacceptable appearance in the marketplace. As a result, Defendant had a "zero tolerance" company policy on fat out.

4

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir.1997). The evidence of the non-movant must be believed and all justifiable inferences must be drawn in the non-movant's favor. *Weisbrot v. Med. College*, 79 F.3d 677, 680 (7th Cir.1996). The burden is on the party moving for summary judgment to demonstrate the absence of a "genuine issue as to any material fact". *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1996).

However, to defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but must "present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 395 (7th Cir. 1998). An issue is material if it must be decided at trial because the evidence, seen in a light that favors the non-movant, would permit a reasonable fact-finder to resolve the issue in favor of the non-movant. *Bahl v. Royal Indemnity Co.*, 115 F.3d 1283, 1298 (7th Cir.1997). Accordingly, there is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1996). The standard for summary judgment is applied with particular care in employment discrimination cases, where intent and credibility are critical. *Adusumilli v. City of Chicago*, 164 F.3d 353, 360 (7th Cir.1998).

## ANALYSIS

Title VII establishes that it is unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual...

5

because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1); *Bahl*, 115 F.3d at 1290. The Age Discrimination and Employment Act of 1967 ("ADEA") prohibits an employer from discharging an individual because of his age. 29 U.S.C. § 623(a)(1); *Adreani v. First Colonial Bankshares Co.*, 154 F.3d 389, 393 (7th Cir.1998). The framework for proving discrimination on the basis of age, race, and national origin are substantially the same. *Rai v. Dynagear Inc.*, No. 98 C 6053, 2000 WL 875401, at *10 (N.D.Ill. 2000).

An employee may prove that an employer violated this provision by providing either direct or indirect evidence of unlawful discrimination. *Bahl*, 115 F.3d at 1290. Under the direct evidence approach, the plaintiff can prove discrimination by presenting direct or strong circumstantial evidence. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 723 (7th Cir.1998). " Direct evidence is that which if believed by the trier of fact will prove the particular fact in question without reliance upon inference or presumption." *Id.* Direct evidence supporting a claim of intentional discrimination is rare; therefore, a court must carefully review affidavits and depositions for circumstantial proof which, if believed, could show discrimination. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 883 (7th Cir.1998). Once the plaintiff presents such direct evidence, the defendant must prove it would have made the same employment decision even if it had not taken the protected status (i.e. race, age, national origin) into account. *Oats v. Discovery Zone*, 116 F.3d 1161, 1170 (7th Cir.1997).

Under the indirect approach, a plaintiff must first establish a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800

6

(1973); *Gosh v. Ind. Dep't of Envtl. Management,* 192 F.3d 1087, 1090-91 (7th Cir.1999). Once a plaintiff has successfully established her prima facie case, a presumption of discrimination is created and the burden shifts to the defendant, who must provide a nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. If a defendant rebuts the presumption by presenting evidence of a valid dismissal, then the plaintiff must show the reason offered by the defense was false and only a pretext for discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507-08 (1993).

An employee can establish pretext by proving one of the following: (1) defendant's explanation has no basis in fact; (2) the explanation was not the real reason; or (3) the real reason stated was insufficient to warrant the termination. *Bahl,* 115 F.3d at 1291. In determining whether an explanation is merely pretext, the test is not whether the reason for firing was a correct business judgment, but rather that the decision maker acted honestly on the offered non-discriminatory explanation. *Id.* In other words, a plaintiff may establish pretext by showing the defendant's proffered reasons are either lies or completely lacking in factual basis. *Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 458 (7th Cir. 1999). For example, if a person is terminated for trivial mistakes that an employer normally tolerates, or the employer otherwise masks its true intentions under a false appearance, there may be enough evidence to support an inference that the employer is hiding something. *Monroe v. Children's Home Ass'n of Ill.,* 128 F.3d 591, 593 (7th Cir.1997). If the plaintiff shows the defendant's alleged reason is false, then the trier of fact can reasonably infer from the falsity of the explanation

7

that the employer is concealing a discriminatory purpose. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000).

### National Origin Discrimination Claim

Plaintiff has not offered any direct evidence he was subjected to harassment or verbal abuse as a result of his national origin; thus, he must rely on indirect proof of discrimination. *Kennedy,*140 F.3d at 723. Under the indirect approach, to establish a prima facie case of national origin discrimination, Plaintiff must show: (1) he was a member of a protected class; (2) he performed his job satisfactorily; (3) he suffered an "adverse employment action" (e.g., termination); and (4) his employer treated similarly situated employees more favorable. *Hong v. Children's Mem'l Hosp.*, 993 F.2d. 1257, 1261 (7th Cir. 1993); *Weisbrot v. Med. College of Wis.*, 79 F.3d 677, 680 (7th Cir.1996); *Munjal v. Board of Trustees of the Univ.of Ill.*, No. 97 C 2222, 1998 WL 895660, at *3 (N.D.Ill. Dec. 9, 1998).

Plaintiff argues his termination was a result of discrimination based on his Egyptian national origin. In attempting to make a prima facie case, Plaintiff states he was the only Egyptian Coptic-Orthodox employee and other employees who made similar mistakes were treated differently. Plaintiff has shown he received a favorable evaluation on May 10, 1998; further, he has stated two employees received more favorable treatment, even though they also made mistakes.

However, Plaintiff has failed to present enough evidence to support the second and forth elements. The evidence offered is conclusory, non-specific and, absent testimony citing concrete facts, insufficient to show the existence of these two elements. *See Drake,* 134 F.3d at 886.

8

Although Plaintiff indicates he received a favorable review earlier, this evaluation is not relevant to his performance at the time of the termination. *See Hong*, 933 F.2d at 1261 ("The critical issue is whether the employee was performing well in her job at the time of her termination."). Further, earlier evaluations alone cannot demonstrate the adequacy of Plaintiff's performance at the crucial time when he was terminated. *Id.* The corporate policy undisputedly contained a zero-tolerance standard for fatting out, and Plaintiff disregarded this policy. The policy also clearly stated while the violations were primarily intended as teaching mechanisms, multiple violations for the same offense could lead to disciplinary action. Plaintiff received numerous violations, as well as a final warning, leading up to the termination; the notices revealed the deficiency in his job performance.

Even if the Court concluded a genuine issue of material fact existed as to whether he was performing his job satisfactorily, Plaintiff has offered no evidence, other than broad, general statements, that other similarly situated employees were treated differently. First, Plaintiff misleads the court by pointing to Cornfield's, Schissler's, and Jones' depositions, and arguing Plaintiff was the only employee fired for exceeding the "fatting out" standards. (Pl's Br. in Resp. to Mot. for Summ. J. at 4.) These depositions do not indicate Plaintiff was the only person ever fired; rather, the depositions show he was the only person fired for violating the fatting-out standard under Trimble's command and he was fired for more than just that incident. Second, Plaintiff testified other employees (i.e. Mariah Palmaros and Karol Kendera) had similar types of disciplinary write-ups but were not termianted.

9

However, Plaintiff admits he does not know if Ms. Palmaros or Ms. Kendera had ever made a mistake similar to his mistake. Moreover, Trimble's deposition testimony reveals that, although the other employees had similar violations, Plaintiff had a larger number of violations than other employees.

The evidence presented demonstrates Plaintiff had made multiple mistakes and more mistakes than other employees. Defendant determined this performance was unsatisfactory and terminated him. Plaintiff has offered no specific evidence to the contrary. Accordingly, Plaintiff has failed to show he was performing his job satisfactorily and similarly situated employees were treated more favorably. Therefore, the Court grants summary judgment in favor of Defendant on this claim.

## Discrimination based on Religion

Plaintiff argues there is direct evidence his religion was a factor considered during his performance reviews. Specifically, he claims he was disadvantaged due to the fact he refused to work on Sundays. He points to a statement made by Trimble in his evaluation of Plaintiff:

> Also limited to this type of industry – he was hired by previous management with the exception of working on Sundays. This has formed hardships for management and the other staff member...

(Pl.'s Br. in Opp'n at 6.) Further, Plaintiff alleges Trimble complained to Schissler about Plaintiff's refusal to work Sundays and claimed Plaintiff's employment contract required he work Sundays. Finally, Plaintiff alleges Jones called Plaintiff a "fundamentalist" in the year prior to his termination.

Taking these facts and inferences in the light most favorable to the

10

non-movant, the Court concludes there is no direct evidence of discrimination presenting a genuine issue for trial. Unless an employee is authorized to speak for the decision maker at issue, the statements of a non-decision maker are imputed to the decision maker only if the former influenced the latter's decision. *Swanson v. Leggett & Platt, Inc.*, 154 F.3d 730, 733 (7th Cir. 1998). In order for isolated, derogatory comments to qualify as proof of discriminatory intent to support a claim of disparate treatment, the remarks must be relatively contemporaneous to the termination of the employment, i.e. the isolated comments must have been made concurrently with the discharge or causally related to the decision making process. *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996) (court held no causal nexus between comment and the decision to discharge because the remark was made in a casual conversation during a long car trip, a setting unrelated to discussions of poor work performance which lead to plaintiff's dismissal). Thus, the direct evidence of discriminatory intent must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question. *See Hong*, 993 F.2d at 1262; *Kennedy*, 140 F.3d at 723 (held that even if the comments could be viewed as discriminatory, the comment did not serve as evidence plaintiff was terminated for discriminatory reasons because the comments were made by a supervisor not involved in making the decision to terminate the plaintiff).

Here, the comments do not contain the necessary connection to the firing to suggest discriminatory intent. Schissler alone made the decision to terminate Plaintiff . Moreover, Plaintiff admits the

11

decision maker, Schissler, did not make the comments. Plaintiff has not offered any direct evidence of discriminatory intent in decision maker's mind at the time of the decision.

However, random comments, although not direct evidence, may be relevant to the question of indirect evidence. *Indurante v. Local 705 Int'l Bhd. of Teamsters,* 160 F.3d 364, 367 (7th Cir. 1998). Under the indirect approach, to establish a prima facie case of religious discrimination, (1) a plaintiff must show the observance or practice conflicting with an employment requirement is religious in nature; (2) she must show she called the religious observance or practice to her employer's attention; and (3) the religious observance or practice was the basis for his discharge or other discriminatory treatment. *EEOC v. United Parcel Serv.,* 94 F.3d 314, 317 (7th Cir.1996).

The incident which finally led to Plaintiff's termination had nothing to do with Plaintiff's agreement not to work on Sundays. In fact, Schissler respected the agreement, even though Trimble was frustrated by it; when Trimble failed to produce a written agreement confirming the agreement, Schissler continued to respect Plaintiff's request not to work on Sundays. Further, Plaintiff admits Schissler never made any comments to him that he found offensive regarding his religion or age. The evidence strongly supports the idea Defendant not only did not act in a discriminatory manner but instead fully accommodated Plaintiff. Plaintiff has not offered any evidence other than some random comments made by non-decision makers to suggest religion was a factor in his termination. Therefore, summary judgment must be granted to his claim.

## Discrimination based on Age

Under the ADEA, an employer does not need to have a "good cause" to fire or demote an employee; rather, the law only mandates the employer not use age as a basis for its decision. *Monroe v. Children's Home Ass'n of Ill.*, 128 F.3d 591, 593 (7th Cir.1997). Thus, a plaintiff is not required to rebut the employer's stated reason; instead, Plaintiff must demonstrate and prove the decision turned on a characteristic the law says the employer may not consider. *Id.* "Although age need not be the sole reason for the discharge, plaintiff must show that, but for his employer's motivate to discriminate against him on the basis of age, he would not have been discharged." *Adreani*, 154 F.3d at 393.

Plaintiff argues there is direct or indirect evidence arising from Jones' comments in the year prior to Plaintiff's termination that Plaintiff was getting old and forgetful. (Def.'s SMF at ¶15.)

However, the Court is concerned with what was in the mind of the decision-maker who terminated Plaintiff. Plaintiff was terminated by Schissler, who was older than Plaintiff, and not Jones. Jones was not involved with the ultimate decision to terminate Plaintiff; Jones did not discuss the matter with Schissler. Further, the comments made by Jones were not made at the time of the termination. These statements, even if voiced by Schissler, were too far removed from the actual incident, i.e. they were made a year prior to the date of termination, so they don't meet the contemporaneous requirement. *Fortier v. Ameritech*, 161 F.3d 1106, 1113 (7th Cir. 1998) (comments made in context of relieving employee some five months before he was terminated are not probative of discriminatory intent). Therefore, the comments hold less weight in

assessing whether there was animus involved in making the decision to terminate Plaintiff, since there is little connection between the comments and the decision to terminate Plaintiff. *Kennedy*, at 723; *Fortier,* 161 F.3d at 1113. Consequently, the comments do not rise to the level of direct evidence to defeat summary judgment.

Since Plaintiff does not offer any direct evidence, the Court's analysis must proceed under the indirect approach. In order to establish a prima facie claim of age discrimination under the ADEA, Plaintiff must show (1) he was in a protected age group (e.g. forty years or older); (2) he was performing his job satisfactorily; (3) he suffered a materially adverse employment action; and (4) younger employees were treated more favorably. *Sirvidas v. Commonwealth Edison Co.,* 60 F.3d 375, 377 (7th Cir.1995); *Cianci v. Pettibone Corp.*, 152 F.3d 723, 728 (7th Cir.1998). An ADEA plaintiff who shows he was replaced by someone "substantially younger" need not prove the replacement is outside the protected class. *Cianci,* 152 F.3d at 728; *O'Conner v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312 (1996).

Plaintiff meets the first and third elements, but, as stated previously, he was not performing his job adequately. In any event, even if he proved a prima facie case, he has not met his ultimate burden: Plaintiff failed to show Defendant did not honestly believe it was terminating Plaintiff due to his most recent violation of the fatting out standard combined with his history of chronic unacceptable job performance. An employee's attempt to avoid summary judgment cannot succeed without evidence demonstrating that the defendant did not honestly believe the explanation. *Adreani,*154 F.3d at 398. It is the

perception of the decision maker, and not the employee, that is relevant. *Id.* Again, the Court does not care if Defendant's decision to terminate Plaintiff was right or wrong; the Court only focuses its attention on whether the reason for which Defendant discharged Plaintiff was discriminatory. *Id.* Where no evidence is introduced that age actually motivated the plaintiff's termination, the issue is not one for the jury. *Id.* at 399. Accordingly, Defendant's motion for summary judgment for this claim is also granted.

## CONCLUSION

For the above reasons, Defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

DATED: August 13, 2001

*[signature]*
WILLIAM J. HUBBLER, DISTRICT JUDGE